UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 1:07-CR-30

EDDIE WALTERS,

HON. GORDON J. QUIST

Defendant.
______________________________/

**OPINION**

Defendant, Eddie Walters ("Walters"), has been charged with possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii). Walters has filed a motion to suppress in which he seeks an order suppressing evidence – five hundred grams of cocaine and a backpack that Walters had possessed – that police officers seized on January 23, 2007.[1] Walters argues that suppression is required because the initial traffic stop was improper and because he did not consent to the search of the trunk of his vehicle in which the backpack containing the cocaine was initially found. The Court held an evidentiary hearing on May 18, 2007, at which time it heard testimony and received exhibits in connection with the motion. Because the Court concludes that Deputy Hopkins lacked probable cause to stop Walters' vehicle, the Court will grant the motion.

**Findings of Fact**

On January 23, 2007, at approximately 7:45 p.m., Berrien County Sheriff's Deputy John Hopkins, who at the time was working road patrol for the Baroda Lake Township Police Department,

[1] A superseding indictment was filed on June 6, 2007, amending the amount of cocaine from five kilograms, as originally charged, to five hundred grams.

was parked in a marked Ford Explorer police vehicle on Interstate 94 ("I-94") near Browntown Road observing eastbound traffic. The Explorer was normally driven by the Chief of Police of the Baroda Lake Township Police Department and was not equipped with a camera, as were the Township patrol cars.[2] As Deputy Hopkins was observing traffic, he noticed a white 2003 Cadillac Deville four door sedan pass by his location heading eastward. The Cadillac was traveling at about the posted speed limit of 70 miles per hour. After the Cadillac passed his location, Deputy Hopkins pulled out into I-94 and accelerated to catch up with the vehicle. Deputy Hopkins pulled to within six to eight car lengths of the vehicle. Soon after the Cadillac came out of an S-curve over the Red Arrow Highway, Deputy Hopkins activated his emergency lights and initiated a traffic stop by pulling the vehicle over onto the right shoulder of the eastbound lane near Lake Street in Berrien County.

Deputy Hopkins observed only the driver in the vehicle and approached the passenger side. He asked the driver, whom he later confirmed to be Walters, for his license and registration, and Walters complied with his request. Deputy Hopkins then informed Walters of the reasons for the stop – the lack of working license plate lights and weaving in and out of his lane. Deputy Hopkins then returned to his patrol vehicle and confirmed through the dispatcher that Walters' license was valid and that the vehicle was registered to Walters. However, the dispatcher informed Deputy Hopkins that a Secretary of State notation advised to confirm the driver's identity. Deputy Hopkins returned to Walters' vehicle and asked Walters if he would step out of the vehicle. Walters complied, and Deputy Hopkins patted Walters down for weapons as a precautionary measure. Deputy Hopkins then escorted Walters to the rear of the vehicle, where he explained to Walters the

[2] Deputy Hopkins was driving the Explorer that night because two of the Township's three patrol cars were in use and there were problems with the third patrol car's lights at the time.

message to double check his identity. Deputy Hopkins asked Walters whether someone else had been using his license, and Walters said that he had learned that his brother had been using his identification. Deputy Hopkins asked Walters to repeat his address, date of birth, and social security number, and Walters did so. After Walters complied, Deputy Hopkins returned the license and paperwork to Walters.

Although the traffic stop had been completed, Deputy Hopkins asked Walters whether there was anything illegal in the vehicle and Walters responded "no." Deputy Hopkins then asked Walters about his trip, and Walters stated that he was traveling from Gary, Indiana, where he visited his uncle, to his home in Flint, Michigan. Deputy Hopkins again asked Walters if there was anything illegal in the vehicle. Walters again said that there was nothing illegal and that he just had some Mexican food that he was taking home. At that point, Deputy Hopkins asked for consent to search the vehicle. Walters said that it would be okay. At Deputy Hopkins' request, Walters went to the front of the vehicle and Deputy Hopkins began to search the interior. Finding nothing, Deputy Hopkins then asked Walters to open the trunk, and Walters told him that there was a button on the dash to open the trunk. Walters walked to the drivers side of the vehicle and opened the door. Deputy Hopkins noticed that Walters became nervous at that point. Walters pushed the gas cover button by mistake, and then pushed the trunk button. After Walters released the trunk lock, Deputy Hopkins asked him to stand at the front of the vehicle, and Walters complied. Deputy Hopkins opened the trunk and saw a backpack. He opened the backpack and found what he believed to be multiple kilogram-size packages of cocaine. Deputy Hopkins drew his service revolver and was going to order Walters to the ground. Before he could do so, however, Walters climbed back into the vehicle and drove off, with the backpack and its contents in the trunk.

Deputy Hopkins radioed for backup units and advised that the vehicle would probably exit at the John Beers Road exit. Deputy Hopkins exited at John Beers Road. As he reached the top of the exit ramp, Deputy Hopkins saw the white Cadillac smashed into a guard rail. He checked the interior and saw that Walters was gone and had taken the backpack. Deputy Hopkins saw footprints in the snow and observed Walters fleeing up a hill. Officers eventually apprehended Walters in the front yard of a residence a short distance away. Deputy Hopkins followed Walters' footprints and located the packages of cocaine near the base of a tree. The backpack was retrieved from the roof of a residence.

Although Deputy Hopkins claims that the Cadillac did not have license plate lights that night, the Court finds, as shown by the photographic evidence, that the vehicle's license plate lights were working and that the plate was properly illuminated, although the bulb on the left side was not as bright as the bulb on the right side of the license plate.[3] In addition, based upon all of the evidence

---

[3]In addition to the photographs, the Court relies upon the stipulated testimony of defense witnesses Ronald Babcock and Kathleen Beaubien. Mr. Babcock is the owner of Ronnie's Auto Specialist, where the vehicle was towed after the incident. The parties stipulated that Mr. Babcock would have testified that the Cadillac was in the same condition on March 5, 2007, as it had been when it was delivered to Ronnie's Auto Specialist on January 23, 2007. Ms. Beaubien, a private investigator retained by Walters, would have testified that she viewed the Cadillac with its engine running on March 5, 2007, after dark, and that from a distance of 50 feet away she saw two lights illuminated over the license plate, with one light shining brighter than the other. The parties further stipulated that she would have testified that she could view the letters and numbers on the license plate with her naked eye. Regarding the pictures, the Government asserts that they are inconclusive. The Court disagrees because the pictures unquestionably show two lights above the license plate, with one of them brighter than the other, exactly as Ms. Beaubien observed several weeks after the accident. In finding the fact that the license plate lights were working that night, the Court has considered all of the evidence on this issue and concludes that the pictures and Ms. Beaubien's stipulated testimony provide the best evidence of the actual condition of the license plate lights on January 23, 2007. The only testimony to the contrary is Deputy Hopkins' statement that he did not see license plate lights when the Cadillac passed him, but the Court gives this testimony little weight because Deputy Hopkins had only a brief moment to observe the vehicle as it passed him. The Government points out that Deputy Hopkins testified that Walters looked at the license plate lights himself but did not point out that they were in fact working. Even if this were true, there could be a number of reasons why Walters did not say anything, and, in any event, the fact remains that the objective evidence shows that the lights were working.

received, the Court declines to credit Deputy Hopkins' testimony that Walters committed lane violations by twice traveling from the right lane into the center lane.[4]

**Conclusions of Law**

It is well established that "[a] police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). The officer must have probable cause to believe that the motorist has violated the traffic laws.[5] *See United States v. Garrido*, 467 F.3d 971, 977-78 (6th Cir. 2006). To establish probable cause, the Government must show "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). In determining the existence of probable cause, the officer's subjective motivation is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996). The Government bears the burden of proving the existence of probable cause. *See United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987).

The Government contends that Deputy Hopkins had probable cause to stop Walters' vehicle based upon two violations of Michigan's Motor Vehicle Code. It contends that Walters' vehicle was in violation of M.C.L.A. § 257.686(2), which requires that "[e]ither a tail lamp or a separate lamp

[4]The Court's decision not to credit Deputy Hopkins' testimony about the lane violations is based in part upon its conclusion that Deputy Hopkins' testimony about the license plate lights is not credible.

[5]The standard for traffic stops in the Sixth Circuit is not entirely settled. The Sixth Circuit has held that a police officer may stop a vehicle based upon a reasonable suspicion of a criminal violation. *See United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). On the other hand, whether a traffic stop for a violation that is only a civil infraction must be supported by probable cause, or whether the less demanding reasonable suspicion standard applies in that situation, remains an open question. *See id.* at 304-95 (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Because the Government has posed the issue as whether probable cause existed, the Court finds it unnecessary to resolve the issue. In any event, the Court would reach the same conclusion even if the less demanding reasonable suspicion standard applied.

shall be constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." It also argues that Deputy Hopkins also had probable cause to stop Walters for violating M.C.L.A. §§ 257.642 and 257.648 because he twice strayed from the right-hand lane into the center lane. As set forth above in its findings of fact, the Court has concluded that neither of the factual predicates for the stop existed. Accordingly, the Court concludes that Deputy Hopkins lacked probable cause to stop Walters, contrary to the Fourth Amendment.

**Conclusion**

For the reasons set forth above, the Court will grant Walters' motion to suppress.

Dated: June 7, 2007

/s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE